UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHY POKIGO,

        Plaintiff,

        v.

TARGET CORPORATION,

        Defendant.

DECISION AND ORDER
13-CV-722(LJV)(HKS)

---

## INTRODUCTION

The plaintiff, Kathy Pokigo, sued Target Corporation ("Target") after she tripped and fell outside a Target store on January 27, 2011. After Target moved for summary judgment, United States Magistrate Judge H. Kenneth Schroeder, to whom this case had been referred under 28 U.S.C. § 636(b)(1)(B)-(C), issued a Report and Recommendation (R&R) finding that this Court should deny the defendant's motion. *See* Docket Items 29, 44. For the reasons stated below, this Court GRANTS the defendant's motion for summary judgment.

## FACTUAL BACKGROUND

On January 27, 2011, at approximately 1:30 pm, Pokigo was walking from the parking lot toward the entrance of the Target store in Orchard Park, New York. She was walking at a brisk pace and wearing open-backed shoes with elevated soles. Before she reached the store's entrance, Pokigo tripped on a crack between the sloped concrete that separated the asphalt from the sidewalk and the ridged concrete that was the entrance sidewalk itself.

Pokigo fell forward onto her left knee and both hands. She immediately stood up and retrieved her left shoe, which had come off and remained at the crack where she had tripped. She then jogged several feet to collect an object that had blown away when she fell.

Pokigo proceeded to the store's guest services desk to report that she had fallen. Thomas Dickinson, an Executive Team Leader at Target, completed a Guest Incident Report and went with Pokigo to view the area where she had tripped. Later that same afternoon, he photographed the area. During his deposition in this case, Dickinson recalled that the area where the plaintiff fell "was in good condition and did not warrant a work order. It looked like a normal - - it looked like it was in good shape." After receiving a copy of her report, Pokigo made a quick purchase in the store before leaving. She returned to Target the next day and took several pictures.

Another Target employee, James Sweda, had the daily responsibility of inspecting the sidewalk and parking lot to check for tripping hazards, such as height differentials between pieces of concrete. Although he later could not recall whether he had worked on the day of the incident, he testified that whenever he discovered a height differential of greater than one-half inch, he would position a caution cone in the area and place a repair work order. As the photographs and video footage show, there was no such cone where and when Pokigo tripped.

**PROCEDURAL BACKGROUND**

Pokigo originally filed her case in the New York State Supreme Court, Erie County. Docket Item 1. Target properly removed the case to this Court on July 12, 2013. 28 U.S.C. §§ 1332, 1441(a), 1446; Docket Item 1.

The case initially was assigned to Hon. Richard J. Arcara, who referred it to Judge Schroeder. Minute Entry dated July 15, 2013; Docket Item 4. Pretrial discovery continued until June 1, 2015, when Target filed its motion for summary judgment. Docket Item 29. The plaintiff responded to the motion on June 26, 2015; Judge Schroeder heard oral argument on July 30, 2015; and the parties contemporaneously filed supplemental briefs on February 5, 2016. Docket Items 36, 39, 41, 42. The case was reassigned from Judge Arcara to the undersigned on March 8, 2016. Docket Item 43.

Judge Schroeder issued his R&R on June 7, 2016, recommending that this Court deny Target's motion for summary judgment. Docket Item 44. Target filed objections on June 21, 2016; Pokigo responded on July 12; and Target replied on July 20. Docket Items 45, 47, 48. This Court heard oral argument on the objections to the R&R on September 13, 2016, and reserved decision. Docket Item 52.

**LEGAL STANDARDS**

**A. Review of the Report and Recommendation**

When a magistrate judge issues an R&R on a dispositive motion, the court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); see 28 U.S.C. § 636(b)(1).

## B. Motion for Summary Judgment

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of establishing that there is no genuine issue of material fact to be decided, and the court must construe the evidence in the light most favorable to the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). If there is any evidence in the record that might result in a jury's finding in favor of the non-moving party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 247-48 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Once the movant has satisfied its burden, the burden shifts to the party opposing summary judgment to present evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Celotex Corp.*, 477 U.S. at 323. The nonmoving party's opposition cannot merely deny the facts in the moving party's pleading but "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmovant fails to carry this burden, the court may grant summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

In a diversity case such as this, the Court applies the substantive tort law of the state whose law would apply under choice-of-law rules—here, New York State. *See, e.g., Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999).

**DISCUSSION**

The crux of the defendant's motion for summary judgment is that the condition alleged by the plaintiff is trivial as a matter of law and therefore not actionable. Docket Item 29-1. Judge Schroeder acknowledged that the dimensions of the crack allegedly causing Pokigo to trip appeared small, but he nevertheless found "that the totality of the circumstances raise a question of fact as to whether the alleged defect is actionable." Docket Item 44 at 7. The defendant's objections to the R&R raise four issues, including that the R&R's conclusion contravened the trivial-defect doctrine and was not supported by the record. *See* Docket Item 45 at 2, 4-5, 7. For the reasons that follow, this Court sustains that objection and respectfully rejects Judge Schroeder's recommendation.

**A. Premises Liability and Trivial Defects**

In New York, a landowner has a duty to maintain its property in a reasonably safe condition. *Basso v. Miller*, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872 (1976). More specifically, a landowner or retail owner may be held liable for injuries resulting from a dangerous condition on the owner's property if the owner created the dangerous condition at issue or had actual or constructive notice of it. *Cook v. Sutton*, 254 A.D.2d 821, 821, 677 N.Y.S.2d 837, 837 (4th Dep't 1998).

If a defendant–owner can show the absence of any dangerous condition as a matter of law, the defendant–owner is entitled to summary judgment. The existence of "a dangerous or defective condition depends on the peculiar facts and circumstances of each case, including the width, depth, elevation, irregularity, and appearance of the defect as well as the time, place, and circumstances of the injury." *Tesak v. Marine Midland Bank*, 254 A.D.2d 717, 717, 678 N.Y.S.2d 226, 226 (4th Dep't 1998). Because

such an inquiry is so fact specific, whether a condition is truly dangerous or defective generally is a fact question for the jury.  *Id.*  But "a property owner may not be held liable in damages for *trivial defects*, not constituting a trap or nuisance, over which a pedestrian might merely stumble, stub his or her toes, or trip."  *Joseph v. Villages at Huntington Home Owners Ass'n, Inc.*, 39 A.D.3d 481, 482, 835 N.Y.S.2d 231, 232-33 (2d Dep't 2007) (citations omitted) (emphasis added).

Despite its name, New York's "trivial defect" doctrine takes into account much more than just the size of the alleged defect.  *Trincere v. Cty. of Suffolk*, 90 N.Y.2d 976, 977, 688 N.E.2d 489, 490 (1997) ("[T]here is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable.").  On the one hand, even small defects are actionable if "their surrounding circumstances or intrinsic characteristics make them difficult for a pedestrian to see or to identify as hazards or difficult to traverse safely on foot."  *Hutchinson v. Sheridan Hill House Corp.*, 26 N.Y.3d 66, 79, 41 N.E.3d 766, 774 (2015).  But on the other hand, when the defect's trivial nature "loom[s] larger" than the other factors the court considers, summary judgment might be appropriate.  *Trincere*, 90 N.Y.2d at 977, 688 N.E.2d at 490.

Because Target has raised the trivial-defect doctrine on a motion for summary judgment, it "must make a prima facie showing that the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses."  *Hutchinson*, 26 N.Y.3d at 79, 41 N.E.3d at 774.  If Target makes that "prima facie showing," the burden shifts to the plaintiff to establish a triable issue of fact.  *Id.*

## B. Applying the Trivial-Defect Doctrine

In support of its motion, Target proffered the expert report of James Ruggiero, a registered architect. *See generally* Docket Item 29-17; *id.* at 3. Ruggiero based his report on the deposition testimony and statements of both Pokigo and Target employees, photographs of the area taken by both parties, the store's surveillance footage, and his own field investigation conducted at the store in December 2013 and May 2014. *Id.* at 4. Referring specifically to one of the photographs taken by the plaintiff on January 28, 2011, Ruggiero concluded that at the time of the incident, the space between the two pieces of concrete where the plaintiff fell was one inch wide with a height differential of approximately one-quarter inch. *Id.* at 4-5. He further opined that although the area showed normal wear and tear, it did not constitute a tripping hazard. *Id.* And he opined that the location where Pokigo fell met general industry standards, appeared to be properly maintained, and was within standard building code allowances at the time the plaintiff fell. *Id.* at 3-4.

The plaintiff did not submit an expert affidavit in response. Instead, she relied only on her own testimony as to the difference in height between the concrete slabs. In her deposition, Pokigo had estimated that the height differential was "an inch . . . [a]t least an inch," but she acknowledged that she never measured it. Docket Item 29-11 at 94. Instead, she based her estimate on "visual observation and the height of [her] shoe," the latter being relevant because Pokigo alleges that her shoe, with a sole she approximates to be at least one inch tall, "got stuck on the crack between the lower and the higher part of the concrete." *Id.* at 94-95; Docket Item 36 at 4.

In light of the photographs and the expert's report, the Court finds it difficult to conclude that the height differential was anything more than one-quarter inch. *See*

*Sokolovskaya v. Zemnovitsch*, 89 A.D.3d 918, 919, 933 N.Y.S.2d 90, 92 (2d Dep't 2011) (concluding that plaintiff-proffered affidavit asserting one-inch elevation differential, unsupported by photographs, meant defect likely was one-quarter inch and therefore trivial as matter of law).  Moreover, a Target employee swore that no construction or repairs of the area in question occurred between 2011 and the time of Ruggiero's field investigation about three years later, and the plaintiff offered no evidence to the contrary; for that reason, Target's measurements—although taken after the fact—are accurate.  Docket Item 29-28 at 3.  And the store's regular practice to place cones around any height differential greater than one-half inch, together with a Target employee's observations at the time of the incident that the area appeared in good condition, further confirms that the height differential was approximately one-quarter inch.

Regardless, the disparity between the positions taken by both sides here makes not an inch of difference: a height differential of even one inch falls "within the range of height differentials found to be trivial."  *Smith v. Target Corp.*, 2012 WL 5876599, at *14 (N.D.N.Y. Nov. 20, 2012); *see also Natijehbashem v. United States*, 828 F. Supp. 2d 499, 507 (E.D.N.Y. 2011) (concluding that height-differential fact dispute—between one-half or one inch—was "immaterial" in light of other circumstances rendering defect trivial).  Target has presented ample evidence, including an expert's report, that there was no dangerous condition.  Further, the Court has carefully scrutinized the photographs and video surveillance submitted by the parties, including the photograph that Pokigo initialed as accurate.  *Cf. Fosmire v. Kohl's Dep't Stores, Inc.*, 2009 WL 891798, at *2 (W.D.N.Y. Mar. 31, 2009) ("Judges rely on photographs depicting the

scene where the injury occurred to help determine whether the defect is actionable as a matter of law."); Docket Items 29-17, 29-19, 29-20, 29-23.  Those photographs support the expert's conclusion that there was no dangerous condition here.

In her papers, Pokigo addresses the "dangerous condition" only in terms of the height differential.  See Docket Item 35 at 4.  At her deposition, however, she also repeatedly testified that her shoe "stuck" in the crack.  See Docket Item 29-11 at 87, 92-95, 98-100.  Apparently for that reason, Judge Schroeder concluded in his R&R that the "plaintiff's deposition testimony and the video surveillance suggest that plaintiff's shoe became trapped in a gap between" the pieces of concrete.  Docket Item 44 at 7.  And this Court therefore paid particular attention to the one-inch gap between the sidewalk slabs—and not simply the height differential—to determine whether Pokigo's shoe becoming "stuck" may have raised a material issue of fact.[1]

At her deposition, Pokigo referred to her shoe being "stuck" only insofar as she claimed that she tripped due to the height differential between the pieces of concrete; she did not suggest that the shoe actually became wedged between the slabs.  See Docket Item 29-11 at 93-95, 98-100.  The video footage confirms that: it shows that when she tripped, Pokigo momentarily lost her shoe not because it was "stuck," wedged, or trapped, but rather because the shoe did not have a back and Pokigo's foot therefore came out of it when she fell.  Docket Item 29-23.  And Pokigo easily retrieved her shoe simply by slipping her foot back into it; she did not have to dislodge it as would have been necessary if it had been "stuck" in the gap between the slabs of concrete.  Id.

---

[1] The width of this gap has gone uncontested by the parties.

What is more, Target's expert opined that one inch is not an uncommon width between two pieces of concrete and was "in compliance with acceptable safety standards," *see* Docket Item 29-17 at 5, and Pokigo offered no evidence to the contrary. Therefore, even considering the one-inch gap along with the small height differential, this Court finds—as a matter of law—that there was no dangerous condition here. *Cf. Tesak*, 254 A.D.2d at 718, 678 N.Y.S.2d at 226 (denying summary judgment where plaintiff averred her foot became "caught in a crevice" and submitted expert's affidavit confirming defect's dangerous nature).

In sum, based on the photographs, the testimony, the reports, and the other documents submitted in this case, this Court concludes that Target met its prima facie burden of demonstrating that the alleged defect in the sidewalk slabs was trivial as a matter of law. Moreover, the circumstances surrounding the alleged defect—the normal lighting; the surface that was not unusually rough, jagged, or slick; the white caulking signaling a small space between two pieces of pavement; and the location, which was neither particularly crowded nor distracting—confirm that conclusion. Faced with the burden to raise a triable issue of fact in response, Pokigo has not proffered any evidence magnifying the de minimus hazard posed by the height differential. *See Hutchinson*, 26 N.Y.3d at 79, 41 N.E.3d at 774. In fact, she offers little more than her own conclusion that the defect was more than trivial.

"[N]ot every injury allegedly caused by an elevated brick or slab need be submitted to a jury." *Czochanski v. Tishman Speyer Props., Ltd.*, 45 F. App'x 45, 47 (2d Cir. 2002) (quoting *Trincere,* 90 N.Y.2d at 977, 688 N.E.2d at 490). Here, for example,

the defect simply is too trivial to be actionable as a matter of law.  In light of this conclusion, this Court need not address Target's other objections to the R&R.

Accordingly, the defendant's motion for summary judgment (Docket Item 29) is GRANTED, and the Clerk of Court is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED.

Dated: March 20, 2017
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE